UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

TRANISHA MANUEL                                              CIVIL ACTION

v.                                                           NO. 21-1590

DESTONY PATTERSON, ET AL.                                    SECTION "F"

ORDER AND REASONS

Before the Court is the plaintiff's motion to remand. For the reasons that follow, the motion is DENIED.

**Background**

This personal injury lawsuit arises from a rear-end collision. The plaintiff failed to serve the defendants she sued in state court, settled with all defendants except her own UM insurer, then finally paid the service fees to have the insurer served more than a year after filing the lawsuit. The insurer says the plaintiff's service conduct was purposeful to prevent removal to this Court.

On May 12, 2020, Tranisha Manuel sued Destony Patterson, Rent to Own Outlet, the Travelers Indemnity Company, and Root Insurance Company as defendants in state court. The suit seeks damages for Ms. Manuel's alleged injuries from a motor vehicle collision when

1

a vehicle driven by Destony Patterson rear-ended her. At the time Ms. Manuel filed the petition, her attorney filed a request for service on each defendant, but she failed to pay the service fees.

More than nine months after filing suit, Manuel still had not paid service fees.  The plaintiff requested service on February 19, 2021. Yet again, the plaintiff did not pay the service fees or provide instructions for service. Travelers remained unserved. Almost a week later on February 25, 2021, apparently having settled her claims against all defendants except Travelers, Manuel filed a motion seeking dismissal with prejudice of her claims against the non-diverse defendants, Patterson, Rent to Own, and Root Insurance Company.  The state court dismissal order, which was signed on March 4, 2021, reserved the plaintiff's rights to proceed against Travelers as her alleged UM/UIM insurer.

More than four months after the non-diverse defendants were dismissed from the state court lawsuit, on July 16, 2021, the plaintiff re-requested service on Travelers and paid the required service fees. Travelers was served a week later. When Travelers received the petition, Travelers reviewed the electronic docket sheet and discovered that all other defendants had been dismissed from the lawsuit. Travelers removed this case on August 20, 2021, invoking the Court's diversity jurisdiction.

2

According to Travelers' Notice of Removal, there is complete diversity of citizenship among the plaintiff (a Louisiana citizen) and Travelers (a Connecticut citizen) and the parties agree that the amount in controversy exceeds $75,000. Travelers acknowledges it removed this case after the one-year deadline for removing lawsuits based on diversity jurisdiction. However, Travelers invokes an exception under 28 U.S.C. § 1446(c)(1) because the plaintiff acted in bad faith in order to prevent the defendant from removing the action. The plaintiff now moves to remand.

I.

A.

On a motion to remand, "the removing party bears the burden of establishing that federal jurisdiction exists and that removal was proper." Baker v. Hercules Offshore, Inc., 713 F.3d 208, 212 (5th Cir. 2013) (citation omitted). "Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" Gutierrez v. Flores, 542 F.3d 248, 251 (5th Cir. 2008) (quoting In re Hot-Hed, Inc., 477 F.3d 320, 323 (5th Cir. 2007).

B.

A defendant may remove a case from state to federal court if the case is within the federal court's original jurisdiction. See

3

28 U.S.C. § 1441(a). The parties agree that the court has diversity jurisdiction. See 28 U.S.C. § 1332(a)(1). They dispute whether the removing defendant complied with removal procedure, specifically, whether removal was timely.

1.

Under 28 U.S.C. § 1446(b)(1), a defendant shall remove a case within 30 days of receipt of "a copy of the initial pleading setting forth the claim for relief." Or, if the case is not initially removable, § 1446(b)(3) states that "a notice of removal may be filed within thirty days after receipt . . . a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." When removal is based on diversity, § 1446(c) sets an outer limit of one year for removal. That is, "[a] case may not be removed under subsection (b)(3) on the basis of [diversity jurisdiction] more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

2.

The plaintiff contends that removal was untimely because it was filed fourteen months after commencement of the suit and thus remand is warranted under 28 U.S.C. § 1446(c)(1). Travelers

counters that the plaintiff's conduct triggers the bad-faith exception to the one-year limit under 28 U.S.C. § 1446(c)(1) because the plaintiff failed to pay the service fee until over a year after filing the suit.

To determine whether a plaintiff has acted in bad faith to prevent removal, "the question is what motivated the plaintiff in the *past*-that is, whether the plaintiff's litigation conduct meant to 'prevent a defendant from removing the action'." Hoyt v. Lane Constr. Corp., 927 F.3d 287, 293 (5th Cir. 2019) (citing 28 U.S.C. § 1446 (c)(1)). Absent a clear standard for determining bad faith, courts frame the inquiry as whether plaintiff manipulated the rules to prevent removal. See Rantz v. Shield Coat, Inc., No. 1703338, 2017 WL 3188415, at *5 (E.D. La. July 26, 2017)(collecting cases). This bad faith inquiry addresses the trial court's discretion and is reviewed for clear error. See Rantz, 2017 WL 3188415, at *5; see also Hoyt, 927 F.3d at 293. Given the fact-specific nature of the inquiry, the timing of a plaintiff's motion to dismiss non-diverse defendants in state court is often critical to determining or inferring manipulation or bad faith.[1]

---

[1] See Hoyt, 927 F.3d at 293 (affirming the district court's denial of a plaintiff's motion to remand, agreeing that it was suspicious that the plaintiff waited until just two days after the one-year deadline to dismiss the in-state defendant); see also Leblanc v. Crowley Marine Services, No. CV 20-00049, 2020 WL 8176124 (W.D. La. Oct. 15, 2020) (finding that the timing of plaintiff's amended complaint was not suspicious because of the significant gap between

5

Hoyt is instructive. There, the Fifth Circuit upheld the district court's finding of bad faith where the Hoyts voluntarily dismissed their claims against a non-diverse defendant one year and two days after the lawsuit was filed. In upholding the district court's finding that removal by the diverse defendant was timely, the Fifth Circuit considered the timing of dismissal relative to the one-year bar, the Hoyts' half-hearted approach to their claim against the non-diverse defendant, and whether plaintiffs received consideration for the dismissal of the non-diverse defendant. See id.

II.

The factual record is limited. The plaintiff filed her lawsuit on May 12, 2020. At that time, her attorney technically requested service on all defendants, but never paid the service fees necessary to effectuate service on any defendant. In February 2021, the plaintiff again technically requested service (but failed to

---

the removal deadline and the amendment). The case literature confirms that the fact-intensive nature of the bad faith inquiry is a qualitative, not quantitative endeavor. See, e.g., Hargrove v. Bridgestone/Firestone North American Tire, LLC, No. 10-CV-0318, 2012 WL 692410 at * 6 (W.D. La. Mar. 2, 2012)(Instead of moving to dismiss or notifying the diverse defendants that Hargrove had settled with the in-state defendants, Hargrove withheld the information until after the one-year deadline passed, leading the court to conclude that "plaintiff intentionally withheld this information from the Diverse Defendants in order to deceive them into believing there was no diversity" thereby manipulating the federal rules to prevent removal).

pay the service fee) and then requested that her claims against the Louisiana defendants be dismissed with prejudice. Without explanation, the plaintiff waited until July 16, 2021 to pay the service fees required for service to be effected on Travelers.

Here, Travelers contends that this suspicious timing demonstrates the plaintiff's bad faith: she requested service on all defendants but never paid the service fees and never attempted to serve Travelers throughout whatever discovery and negotiations ultimately led to dismissal of her claims against the other, non-diverse defendants. Travelers underscores that, despite the lawsuit becoming removable nine months after its commencement, the plaintiff waited until after the one-year mark to serve Travelers in an attempt to circumvent federal jurisdiction. What is more, Travelers submits, the plaintiff offers no good faith explanation for its service conduct in state court.

Travelers contends that the Court may infer bad faith from the plaintiff's conduct because plaintiff's counsel is presumed to know the law.[2] Louisiana cases construing Louisiana Civil Procedure Article 1201 indicate that a request for service without

---

[2] The time limits governing removal are keyed to formal service of process. See Bd. Of Regents of Univ. of Tex. Sys. V. Nippon Tel. & Tel. Corp., 478 F.3d 274, 278 (5th Cir. 2007) (citing Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48 (1999)). Whether a plaintiff has properly served the defendant generally is determined by reference to the applicable state law service provisions.

7

payment of service fees is not a proper request. See <u>Walker v. GoAuto Ins. Co.</u>, 2020-0331, --- So. 3d ---, 2021 WL 2384843 (La. App. 4 Cir. 6/10/21)(citing <u>Jenkins v. Larpenter</u>, 2004-0318, pp. 4-5 (La. App. 1 Cir. 3/24/05), 906 So. 2d 656). In other words, as a practical matter, a request for service without the accompanying required service fee to effect service is an incomplete, or empty, request for service.

The plaintiff contends that the two requests for service (at the outset of the lawsuit and in February) undermine any showing of bad faith and that "[f]or reasons unknown to the plaintiff, the sheriff's office did not process service" on Travelers.[3] Travelers responds that requests for service unaccompanied by service fees are indicative of manipulation and considering the suspicious timing and the plaintiff's failure to offer any good faith or benign explanation for why she failed to pay service fees until after the one-year removal deadline had passed, the Court may infer bad faith. The Court agrees.

Twice the plaintiff failed to properly and completely request service on Travelers and then she delayed in paying the required service fee only after forum defendants had been dismissed from the lawsuit and after the one-year removal deadline had expired.

---

[3] In addition to failing to pay service fees, the record indicates that the second request for service on Travelers failed to include an address stating where to serve them.

8

This demonstrates that the plaintiff acted in bad faith under 28 U.S.C. § 1446(c)(1).  The plaintiff's "explanation" that she does not know why Travelers was not served sooner rings hollow.[4]  Accordingly, IT IS ORDERED: that the plaintiff's motion to remand is DENIED.

                New Orleans, Louisiana, September 29, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[4] Counsel are cautioned to be aware of 28 U.S.C. § 1927 regarding an assessment of attorney's fees for vexatious litigation.

    The plaintiff's belated reply attempts to explain the failure to pay service fees, but it begs more questions than answers. The plaintiff still does not explain the failure to pay the service fees when the lawsuit was filed in May 2020. The reply suggests that service fees were paid in February 2021 (the same service "attempt" in which Travelers noted that no address for service was provided), but -- again, for reasons arguably unknown to the plaintiff -- the checks attached to the reply paper were returned to the plaintiff just recently on September 17, 2021 as "outdated." The plaintiff does not explain why the sheriff's office might have considered the checks to be "outdated" if indeed they were sent in February 2021, nor explain the plaintiff's alleged failure to provide an address for the alleged February service request.  Nor does the plaintiff explain why she only recently learned the February 2021 checks were not accepted, yet a proper or successful service request clearly was effected in July 2021, begging the question: why request service, provide an address for service, and pay the fees required for service in July 2021 if one believes the February 2021 service attempt was sufficient to effect service? Without an affidavit authenticating the checks, or any further explanation of the circumstances surrounding each attempt to pay service fees and provide the address for service, the gaps in the service record, coupled with the timing of the ultimate successful service event in July 2021, remain indicative of the plaintiff's bad faith.